SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MARTHA DUNCAN, an individual, ) | Arizona Supreme Court |
| ) | No. CV-02-0191-PR |
| Plaintiff-Appellant, ) | |
| ) | Court of Appeals |
| v. ) | Division One |
| ) | No. 1 CA-CV 01-0535 |
| SCOTTSDALE MEDICAL IMAGING, LTD., ) | |
| an Arizona corporation; ) | Maricopa County Superior |
| HOSPITAL RADIOLOGISTS, LTD., an ) | Court |
| Arizona corporation, ) | No. CV 99-019784 |
| ) | |
| Defendants-Appellees. ) | |
| ) | **O P I N I O N** |
| _____ ) | |

Appeal from the Superior Court of Maricopa County
No. CV 99-019784
The Honorable Sherry Hutt, Judge
**REVERSED AND REMANDED**

_____

Court of Appeals, Division One
Memorandum Decision
Filed April 30, 2002
**VACATED**

_____

Anderson, Hurwitz & Harward, P.C.                    Scottsdale
     by   Eric C. Anderson
          Randy J. Hurwitz
Attorneys for Plaintiff-Appellant

Kent & Wittekind, P.C.                               Phoenix
     by   Richard A. Kent
          Stephen M. Booth
Attorneys for Defendant-Appellee, Scottsdale
     Medical Imaging, Ltd.

Arizona Trial Lawyers Association                    Phoenix
     by   Amy G. Langerman
Attorneys for Amicus Curiae, Arizona Trial
     Lawyers Association
_____

**J O N E S, Chief Justice**

## INTRODUCTION

¶1      We granted review of two questions raised by petitioner, Martha Duncan, to determine whether the trial court and court of appeals erred in dismissing Duncan's battery claim against respondent, Scottsdale Medical Imaging ("SMI"):  (1) **whether the injection of a drug by a health care provider against a patient's express wishes constitutes a battery**, and (2) whether section 12-562(B) of Arizona's Medical Malpractice Act ("MMA"), Ariz. Rev. Stat. ("A.R.S.") §§ 12-561 to -594 (2003), violates Article 18, Section 6 of the Arizona Constitution as an abrogation of a patient's right of action in common law battery to recover damages for injuries.  We answer both questions in the affirmative, concluding that Duncan has properly stated a claim for battery and that the MMA's prohibition of battery claims amounts to an abrogation of the right of action, in violation of Article 18, Section 6 of the Arizona Constitution.

¶2      Jurisdiction is grounded in Article 6, Section 5(3) of the Arizona Constitution.  We review the grant of summary judgment *de novo*, and view the evidence and all reasonable inferences in the light most favorable to the party against whom summary judgment was entered.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13, 38 P.3d 12, 20 (2003).  Additionally, we review *de novo* the lower courts' interpretation of statutes and constitutional issues.

*Hohokam Irr. and Drainage Dist. v. Arizona Public Service Co.*, ___ Ariz. ___, ¶ 5, 64 P.3d 836, 839 (2002).

**FACTS**

¶3        SMI performed a magnetic resonance imaging ("MRI") examination on Duncan on June 19, 1998.  The procedure was performed at Scottsdale Memorial Hospital North.  Duncan required sedation due to a back condition that would not allow her to lie still for the duration of the MRI procedure.  On the day of the procedure, Duncan spoke by telephone to an SMI nurse.  Duncan told the nurse she would only accept demerol or morphine for sedation and no other drug.  The nurse assured Duncan that only demerol or morphine would be administered.

¶4        On the day of the procedure, Duncan asked Nurse Gary Fink, allegedly an employee of SMI, what drug she would be given. Nurse Fink said it was fentanyl, a synthetic drug similar to demerol and morphine.  Duncan expressly rejected fentanyl, again stating that she did not want to receive anything but demerol or morphine.  She repeated this request three separate times and asked Nurse Fink to call her doctor to discuss the medication or reschedule the MRI.  Duncan finally agreed to proceed when Nurse Fink told her the medication had been changed to morphine.  Duncan later learned that Nurse Fink, contrary to express understanding, had actually given her fentanyl.  The administration of fentanyl led to serious complications, including severe headache, projectile vomiting, breathing difficulties, post-traumatic stress disorder,

-3-

and vocal cord dysfunction.

¶5        Duncan sued SMI and Hospital Radiologists, Ltd. ("defendants"), alleging she informed defendants and/or their agents that she suffered allergic reactions to certain medications and that she specifically instructed that she was not to be given any synthetic drugs.  Duncan alleged that defendants and/or their agents administered fentanyl, through injection, despite assuring her that the proper medication was being used.  Duncan initially asserted three claims:  medical malpractice (count 1), lack of informed consent (count 2), and battery (count 3).

¶6        After the case was set for trial, Duncan moved to dismiss counts 1 and 2.  SMI did not oppose the motion.  It then argued that Duncan's remaining battery claim must be classified as a medical malpractice action under A.R.S. § 12-562(B), and required presentation of expert testimony pursuant to A.R.S. § 12-563.  The trial court agreed, ruling that Duncan's claim was for medical malpractice and that the governing statutes were constitutional as a "regulation" of common law battery.  Duncan sought special action relief of the trial court's ruling, but the court of appeals declined jurisdiction.

¶7        Duncan then moved for summary judgment on the issue of battery, asking the trial court to allow her claim to proceed outside the MMA without the need to present expert testimony on the standard of care.  SMI contended the MMA barred the battery claim and cross-moved for summary judgment, seeking dismissal of the so-

-4-

called malpractice claim because Duncan failed to name an expert witness to testify that SMI's treatment fell below standard and that such failure was the cause of injury. The trial court denied Duncan's motion and granted SMI's motion, holding that evidence of the applicable standard of care and causation was essential to the claim. The trial court dismissed count 3, the battery claim, against all defendants.

¶8 On appeal, Duncan asked the court of appeals to overturn the judgment dismissing her complaint and again argued that the MMA violates Article 18, Section 6 of the Arizona Constitution because it abrogates the common law battery action against a health-care provider. The court did not reach the constitutional issue, having concluded the following: first, that the facts upon which Duncan relied did not give rise to an action for battery because she consented to the injection; second, that the trial court erred in characterizing count 3 as a claim for medical malpractice when it was knowingly intended to be one for battery; and third, that Duncan had waived any medical malpractice claim she may have had by failure to have a qualified expert establish the requisite standard of care. Finally, the court of appeals found that Duncan could not argue the constitutionality of the MMA since she had no claim for battery and failed to pursue a negligence claim for medical malpractice.

## DISCUSSION

**A. Battery Claim**

¶9        We must first determine whether the administration of a drug against a patient's express wishes constitutes a battery under Arizona law.  An actor is subject to liability to another for battery if the actor intentionally engages in an act that results in harmful or offensive contact with the person of another.  *See* Restatement (Second) of Torts §§ 13, 18 (1965) (hereafter "Restatement").  The law is well established that a health care provider commits a common law battery on a patient if a medical procedure is performed without the patient's consent.  *See Hales v. Pittman*, 118 Ariz. 305, 310, 576 P.2d 493, 498 (1978).  A battery claim is defeated, however, when consent is given.  *See* Restatement §§ 13 cmt. d, 18 cmt. f, 892-892D.  Thus, the central question in a case of medical battery is whether the patient has effectively given his or her consent to the procedure.

### 1.    Informed Consent

¶10        SMI argues that Duncan's claim is really a "lack of informed consent" case premised on negligence.  Because Duncan failed to establish the standard of care required by providing expert testimony, SMI contends Duncan has failed to state a claim for negligence and the claim should be dismissed.  Thus, as a preliminary matter, we distinguish "lack of consent" in the instant case from those cases involving "lack of informed consent."

¶11        Courts generally recognize two theories of liability for unauthorized medical treatment or therapy rendered by physicians to their patients:  a traditional intentional tort claim for battery

and a negligence claim for lack of informed consent.  *See Trogun v. Fruchtman*, 207 N.W.2d 297, 311-12 (Wis. 1973).  A lack of informed consent claim "concerns the duty of the physician to inform his patient of risks inherent in the surgery or treatment to which he has consented."  *Mink v. Univ. of Chicago,* 460 F. Supp. 713, 716 (N.D. Ill. 1978); *see also* Restatement § 892B cmt. i.  As explained by the California Supreme Court in *Cobbs v. Grant*, battery and informed consent theories apply in different situations:

> The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented.  When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present.  However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information.  In that situation the action should be pleaded in negligence.

502 P.2d 1, 8 (Cal. 1972).

¶12    Unfortunately, past decisions by Arizona courts have used the term "informed consent" inconsistently.  In *Cathemer v. Hunter* the court of appeals observed the following:  "The essence [] of an *informed consent* question in a battery case involving a physician is what did the patient agree with the physician to have done, and was the ultimate contact by the physician within the scope of the patient's consent."  27 Ariz. App. 780, 783, 558 P.2d 975, 978 (1976) (emphasis added).  Subsequently in *Hales v. Pittman*, this

court explained that an operation becomes an "informed consent battery" claim when a doctor fails to disclose information concerning alternative procedures and the patient does not understand the nature of the surgical procedure attempted and the probable results of the operation. 118 Ariz. at 311–12, 576 P.2d at 499–500.

¶13     The inconsistent use of terminology has blurred the distinction between "lack of informed consent," which should be pled in negligence, and "lack of consent," which should be pled in battery. To clear up any confusion, we adopt the reasoning in *Cobbs v. Grant* and hold that claims involving lack of consent, i.e., the doctor's failure to operate within the limits of the patient's consent, may be brought as battery actions. In contrast, true "informed consent" claims, i.e., those involving the doctor's obligation to provide information, must be brought as negligence actions. As we noted in *Hales*, "we leave the precise parameters of the required disclosure for any particular [informed consent] case to be established by expert testimony in accordance with the applicable standard of care." 118 Ariz. at 311 n.4., 576 P.2d at 499 n.4.

¶14     We note that informed consent is not implicated in the decision in the instant case: Duncan does not claim that SMI failed to disclose possible risks associated with the administration of fentanyl. What is implicated is an act which contravenes the consent given. Therefore, we turn to the question

-8-

whether, taking the facts in the light most favorable to Duncan, SMI and/or its agents performed a procedure to which Duncan did not consent.[1]

### 2. Limited Consent

¶15     The court of appeals found that Duncan's battery claim should fail because she consented to receive the injection. We disagree. Her general authorization of an injection does not defeat her battery claim because her consent was limited to certain drugs. Duncan explicitly conditioned her consent on the use of morphine or demerol and rejected the use of any other drug. Conduct involving the use of a sedative other than morphine or demerol, contrary to explicit instruction and understanding, cannot be viewed as consensual.

¶16     The Restatement requires that consent, to be effective, must be "to the particular conduct, or substantially the same conduct." Restatement § 892A (2)(b). The terms and reasonable implications of the consent given determine the scope of the particular conduct covered. Restatement § 892A cmt. d. The "scope" of consent is an issue for the trier of fact to determine.

---

[1] At oral argument, SMI contended that it could not be held liable in this case even if Nurse Fink committed a battery because Nurse Fink is an employee of Scottsdale Hospital, not SMI. This is an issue that will depend on various factual determinations to be made in the trial court. Additionally, we do not decide the legal question whether SMI may be held liable for Nurse Fink's alleged intentional tort. The parties have not yet developed the requisite factual record on either issue because the lower courts dismissed the action on unrelated legal grounds.

*Id.; see also Cathemer v. Hunter*, 27 Ariz. App. at 785, 558 P.2d at 980 (holding a jury question existed as to whether a patient consented to an operation and whether the operation received was "substantially similar" to the operation to which the patient consented so as to be within the scope of the consent). "[A]nything greater or different than the procedure consented to becomes a battery." *Hales*, 118 Ariz. at 310, 576 P.2d at 498.

¶17 The parties in this case characterize differently the "particular conduct" to which Duncan consented. Duncan contends she gave limited consent for an injection of the painkillers morphine or demerol, but that she rejected fentanyl. SMI claims Duncan consented to the insertion of a catheter through which pain medication was to be administered, and therefore the nature of the procedure was the same no matter which drug was used. SMI's position is untenable, given the record before us.

¶18 The relevant inquiry here is not whether the patient consented to an injection; the issue is whether the patient consented to receive the specific drug that was administered. Duncan could have given broad consent to the administration of any painkiller, but she gave specific instructions that she would accept only morphine or demerol and nothing else. We hold that when a patient gives limited or conditional consent, a health care provider has committed a battery if the evidence shows the provider acted with willful disregard of the consent given. *See Ashcraft v. King*, 278 Cal. Rptr. 900, 904 (Cal. Ct. App. 1991) (surgeon

-10-

committed battery when patient's consent to operation was conditioned on use of family-donated blood only, and surgeon intentionally violated condition). At oral argument, SMI admitted that Duncan presented a viable battery claim because Nurse Fink injected her with a painkiller which she had expressly rejected.

### 3. Consent Obtained by Misrepresentation

¶19 Even assuming arguendo that there was consent to this procedure, there would remain the question of whether that consent was obtained by misrepresentation and thus invalid. The court of appeals relied on comment f to Restatement § 18 and found that Duncan's consent was valid, even if obtained by the nurse's misrepresentation. The court found that Duncan's only remedy was an action for the conduct of the person who procured her consent. The court of appeals erred in its application of the Restatement.

¶20 According to Restatement § 892B(2), consent is ineffective if obtained by another's misrepresentation:

> If the person consenting to the conduct of another *is induced to consent by a substantial mistake concerning the nature of the invasion of his interests* or the extent of the harm to be expected from it and the mistake is known to the other or *is induced by the other's misrepresentation*, the consent is not effective for the unexpected invasion or harm.

(Emphasis added.) So long as a patient's mistake concerning the nature of the invasion was induced by the health care provider's misrepresentation, the Restatement provides that a patient may either bring an action against the health care provider for

-11-

misrepresentation or "treat the consent as invalid and maintain any tort action open to [her] in the absence of consent." Restatement § 892B cmt. h. Accordingly, we hold that if a patient's consent is obtained by a health care provider's fraud or misrepresentation, a cause of action for battery is appropriate. *See* 6 Am. Jur. 2d Assault and Battery § 127 (1999).

¶21 On this record, Duncan's case falls squarely within Restatement § 892B because the alleged facts, taken in the most favorable light, support her claim that SMI and its agents obtained consent for the injection by express misrepresentation. Duncan told Nurse Fink on three separate occasions that she would accept only morphine or demerol. Nurse Fink told Duncan the medication had been changed to morphine and then gave her fentanyl regardless. Duncan's consent was thus ineffective because Nurse Fink's alleged misrepresentation led Duncan to believe she would receive a morphine shot, not a fentanyl shot.

¶22 Further, the scenario addressed in comment f to Restatement § 18, on which the court of appeals relied, is distinguishable from the instant case because Duncan was not *fully aware* of the particular character of the contact. Section 18, comment f reads, in part:

> The rule stated in § 892B, that a consent to a contact the *particular character of which the other is fully aware*, is not made ineffective by reason of the fraudulent misrepresentations which induce the other to give the consent, is of peculiar importance in determining the existence of liability for a merely offensive contact. Under the rule stated in that Section,

-12-

> the consent, though fraudulently procured, prevents the infliction of the contact from being itself a wrong and as such actionable. The other's only possible remedy is an action based upon the fraudulent and, therefore, tortious character of the conduct of the actor by which he has procured the consent.

(Emphasis added.) This comment addresses only those situations in which a patient is "fully aware" of the nature of an invasion and agrees to it.

¶23 In contrast, comment h to Restatement § 892B addresses those situations in which the patient is mistaken about the nature of the invasion and the mistake is induced by a health care provider's misrepresentation. Nurse Fink allegedly told Duncan she would receive a morphine injection, when in fact he knew it to be fentanyl. Duncan, unaware of the true nature of the invasion, agreed to proceed based on Nurse Fink's misrepresentation. This provides the elements of a claim for battery.

¶24 SMI contends a health care provider must be aware that the patient made a substantial mistake as to the nature of the invasion for the consent to be ineffective. But the Restatement test is written in the disjunctive: the patient's mistake regarding the nature of the invasion must *either* be known to the health care provider *or* must be induced by the provider's misrepresentation. *See* Restatement § 892B(2). Moreover, § 892B, comment h, which specifically addresses misrepresentation, provides as follows: "The mistake having been produced by the misrepresentation of the actor[,] he will normally be aware of its existence, *but his*

-13-

*knowledge of the mistake is not necessary.*"  (Emphasis added.)

Here, Fink allegedly induced Duncan to consent by misrepresenting that the painkiller to be used was morphine.  Having met one prong of the test, Duncan is not required to establish that Fink knew of her mistaken belief regarding the nature of the injection to prove fraudulently obtained consent.

¶25     SMI further contends that under Restatement § 892B(2) Duncan must prove that SMI or its agents knew or should have known that she made a substantial mistake as to the extent of harm reasonably to be expected from administration of fentanyl.  Here again, the Restatement is worded in the disjunctive:  A patient's consent is ineffective so long as she makes a "substantial mistake concerning the nature of the invasion of [her] interests *or* the extent of harm to be expected from it."  Restatement § 892B(2) (emphasis added).  Duncan need not prove that SMI knew or should have known she was mistaken about the extent of harm to be expected from the injection because she has alleged her mistake was induced by Nurse Fink's misrepresentation.

¶26     Duncan's evidence supports the claim for battery because she alleges SMI and/or its agents administered fentanyl without consent.  We now address whether she may bring that cause of action under Arizona law.

**B.   Article 18, Section 6 and the Medical Malpractice Act**

¶27     The Medical Malpractice Act prohibits a patient from bringing an action for injury or death against a licensed health

-14-

care provider based on assault or battery.  A.R.S. § 12-562(B). Duncan argues that the MMA unconstitutionally prohibits bringing a battery action because such actions are protected by Article 18, Section 6 of the Arizona Constitution, the anti-abrogation clause, which provides:  "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

¶28     We perform a two-part analysis of claims arguably protected under the anti-abrogation clause.  First, we determine whether Article 18, Section 6 protects the right of action at issue.  *See Cronin v. Sheldon*, 195 Ariz. 531, 538, ¶¶ 34, 39, 991 P.2d 231, 238 (1999) (anti-abrogation clause is not implicated where the right "originates exclusively within the statute" and "cannot trace its antecedents to a common law right of action").  The anti-abrogation clause "prevents abrogation of all common law actions for negligence, *intentional torts*, strict liability, defamation, and other actions in tort which trace origins to the common law."  *Id.* at 538, ¶ 35, 991 P.2d at 238 (emphasis added).  Battery is an intentional tort whose origins **are** the common law.  *See Mills v. Rogers*, 457 U.S. 291, 295 n. 4 (1982) ("Under the common law of torts, the right to refuse any medical treatment emerged from the doctrines of trespass and battery, which were applied to unauthorized touchings by a physician.").  Accordingly, the protection of Article 18, Section 6 extends to the right of action asserted in the case at bar.

-15-

**¶29** Second, we determine whether the MMA simply regulates a patient's right of action to recover damages for injuries for battery or completely abrogates that right. Article 18, Section 6 precludes abrogation but not regulation. *Cronin*, 195 Ariz. at 538, ¶ 34, 991 P.2d at 238. We apply the "reasonable election" test to distinguish between regulation and abrogation. *See Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984) (statute that required a minor who was injured before reaching the age of seven to sue for such injuries before reaching the age of ten did not allow the minor a reasonable choice of alternatives); *Ruth v. Indus. Comm'n*, 107 Ariz. 572, 575, 490 P.2d 828, 831 (1971) (1965 workers' compensation statute provided an employee with an election because it "furnishe[d] an alternative for the employee which he [could] voluntarily accept or reject"); *Moseley v. Lily Ice Cream Co.*, 38 Ariz. 417, 421, 300 P. 958, 959 (1931) (1928 workers' compensation law was constitutional because it provided a reasonable election between statutory remedy or common law right of action).

**¶30** Under the "reasonable election" test, the legislature may regulate a right of action protected by Article 18, Section 6, but it must "leave[] a claimant reasonable alternatives or choices which will enable him or her to bring the action. It may not, under the guise of 'regulation,' so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action." *Barrio*, 143 Ariz. at 106, 692 P.2d

-16-

at 285; *see also Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 342, 861 P.2d 625, 628 (1993).

**¶31** SMI contends that the MMA offers a reasonable choice of alternatives because it does no more than limit the theories of liability a patient may use to seek recovery. We disagree because a regulation that limits the theories of liability under which a plaintiff may sue is nonetheless an abrogation when the "alternative" theory of recovery protects different interests. *Hazine*, 176 Ariz. at 342, 861 P.2d at 628. In *Hazine*, we held that the right to sue in negligence or express warranty was not a reasonable alternative to a products liability action because the theories of recovery under the former "proved inadequate to protect injured users and consumers." *Id*. at 343, 861 P.2d at 629 (citing *Rubino v. De Fretias*, 638 F. Supp. 182 (D. Ariz. 1986)).

**¶32** *Rubino* was a suit in which the federal district court construed Arizona law. There, the patient sued for battery against her physician for removing her vaccination mark without consent. The court concluded that § 12-562(B) unconstitutionally abrogated a patient's right to sue in battery, notwithstanding the patient's protected right to sue for negligence. *Rubino*, 638 F. Supp. at 185. The court noted "battery and negligence (malpractice) constitute separate causes of action," each protecting different interests:

> Each theory of liability preserves a distinct societal interest in the physician-patient relationship. The battery theory sustains a patient's right of self-

determination; the negligence theory recognizes a physician's obligation to provide reasonable disclosure of the available choices with respect to the proposed procedures and the dangers inherently and potentially involved in each . . . . In limiting actions against medical health providers to medical malpractice actions and prohibiting an action based upon assault and battery, the legislature has not merely regulated the right to sue but abrogated the patient's basic common law right to enforce his right of self-determination, in violation of Article 2, Section 31 and Article 18, Section 6 of the Arizona Constitution.

*Id.* at 185-186.

¶**33**     A statutory regulation that completely abolishes a right of action is an abrogation. *Ruth*, 107 Ariz. at 575, 490 P.2d at 831. The express language of the MMA abolishes the right to bring an action in battery against a licensed health care provider, *see* A.R.S. § 12-562(B), and also mandates that medical malpractice actions be limited to those listed in § 12-561. Additionally, any action brought under the MMA requires proof of elements not present in a common law action for battery, including duty, breach, and causation, *see* A.R.S. § 12-563, all of which are elements required in negligence actions, and have no application in the field of intentional torts. Thus, the MMA's requirement that a claimant prove multiple additional elements dramatically transforms the nature of the battery claim. While the MMA leaves in place notions of liability arising in negligence, it provides no alternative to a simple action in battery.[2] We hold that § 12-562(B) amounts to

---

[2]     We note an apparent contradiction in the statute. On one hand, § 12-562(B) fully eliminates battery actions against health care providers; on the other, § 12-561(2) provides that medical

-18-

an unconstitutional abrogation of a patient's right to sue in battery, notwithstanding the plaintiff's ability to sue under other theories of liability.

¶34 The reasoning in *Rubino*, *supra*, is consistent with our view. As the *Rubino* court noted, "whether an action is founded in battery or negligence is not merely a matter of evidence and procedure. The theory of liability may very well determine what injury has resulted from the wrong committed." 638 F. Supp. at 185. Here, Duncan's injury includes a violation of her right of self-determination, specifically the right to determine which medications she would accept or reject. As such, Duncan should be allowed to proceed with a common law battery action outside the evidentiary and other requirements of the MMA.

**CONCLUSION**

¶35 Duncan's complaint states a claim for battery. While

---

malpractice actions may be maintained against the same providers "for injury or death . . . based upon . . . misconduct . . . in the rendering of . . . medical services . . . without express or implied consent." Thus, while § 12-562(B) eliminates the tort, § 12-561(2) purports to regulate it. We cannot determine with certainty what the legislature intended, but if the intent was to eliminate, then, as indicated, an abrogation most certainly has occurred. But even if the intent was to regulate, it was done in a manner that, for an action to succeed, elements unique to a negligence claim, *i.e.*, duty, breach, and causation, would have to be proven as well. This is not a reasonable alternative to simple battery. We thus conclude that the common law tort of battery has been subjected either to complete elimination or to such radical modification that the end result is virtually the same -- battery as known at common law would no longer exist. This leads inevitably to the more plausible conclusion that an abrogation has occurred in violation of Article 18, Section 6.

A.R.S. § 12-562(B) precludes such a claim, we hold this subsection of the statute unconstitutional under Article 18, Section 6 of the Arizona Constitution as an abrogation of the right to bring an action in battery to recover damages for injuries.  We make no determination as to the responsibility of SMI for the actions of Nurse Fink as that question is one to be determined by the trial court on a fully developed factual record.

¶36     We vacate the court of appeals' memorandum decision, reverse the judgment of the trial court, and remand the case to the trial court for further proceedings consistent with this opinion.

_____
                        Charles E. Jones, Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Vice Chief Justice




_____
Michael D. Ryan, Justice

_____
Robert J. Corcoran, Justice (Retired)*

_____
Joseph H. Howard, Judge*


    * Due to a vacancy and a recusal on this court at the
    time this case was decided, the Honorable Robert J.
    Corcoran, Justice (retired) and the Honorable Joseph H.
    Howard, a judge of the Arizona Court of Appeals, Division
    Two, were designated to participate in this case under
    Article 6, Section 3 of the Arizona Constitution.