NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BARBARA BARNA BROWN, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

JOHN C. LINCOLN HEALTH NETWORK, an Arizona Non-Profit
corporation, *Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 14-0814
FILED 5-17-2016

Appeal from the Superior Court in Maricopa County
No. CV2009-019514
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Barbara Barna Brown, Phoenix
*Plaintiff/Appellant/Cross-Appellee*

Quintairos, Prieto, Wood & Boyer, P.A., Phoenix
By Andrew E. Rosenzweig, Rita J. Bustos
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

---

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Patricia K. Norris joined.

---

**P O R T L E Y**, Judge:

¶1        Barbara Brown ("Brown") appeals the summary judgment granted to John C. Lincoln Health Network ("JCL").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A.  Prior Litigation

¶2        Brown's mother, Sally S. Barna, died while in a hospital owned by JCL.  The death certificate stated that the immediate cause of death was cardiorespiratory arrest, caused by "multi-organ failure" and "stomach perforation."  Brown filed a complaint alleging JCL was liable for Barna's wrongful death as a result of medical malpractice under a variety of theories.  After Brown filed a motion for partial summary judgment and JCL filed a cross-motion for summary judgment, the superior court granted JCL's motion.

¶3        Brown filed an appeal after her motion for new trial was denied.  On appeal, we found that the superior court properly dismissed the medical malpractice claims based on lack of informed consent and inadequate patient care, but found the court should not have dismissed her medical battery claim for lack of consent.  *Brown v. John C. Lincoln Health Network*, 1 CA-CV 11-0230, 2012 WL 1698162, at *1, ¶ 1 (Ariz. App. May 15, 2012) (mem. decision).  As a result, we affirmed the judgment in part and remanded the medical battery claim for further proceedings.   *Id.* at *4, ¶ 17.

### B.  This Litigation

¶4        After the mandate was issued and the matter was remanded, JCL filed an unsuccessful motion for summary judgment, arguing that because this was a wrongful-death claim, an expert witness was required

to prove that the battery was the cause of death.[1]  JCL then filed another summary-judgment motion, arguing that it was entitled to judgment as a matter of law because Brown, in her capacity as her mother's power of attorney, had consented to the medical procedure she claims resulted in her mother's death.  Brown responded, and during the oral argument admitted she had consented to the medical procedure.  She argued, however, she had been falsely told there was a medical emergency requiring the medical procedure and, as a result, her consent was ineffective because it had been procured through misrepresentations and under duress.

¶5          After finding that there was "no credible evidence that [Brown]'s consent was invalid," and that she needed, but had not offered, medical-expert testimony to demonstrate support for her theories that her consent was vitiated by JCL's action, the superior court granted JCL summary judgment.  Brown then filed an unsuccessful motion for new trial, and this appeal from the final judgment of dismissal and costs.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).[2]

## DISCUSSION

¶6          Brown argues the superior court erred by granting summary judgment to JCL.  She contends that her consent to the medical procedure was procured through misrepresentations and by subjecting her to duress, which precluded summary judgment.

¶7          We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the party opposing the motion.  *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14, 340 P.3d 405, 408 (App. 2014) (citation omitted).  We are mindful that summary judgment should be granted when the facts supporting the claim or defense "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense."  *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).  And we will affirm the grant of a motion for summary judgment if it was correct for any reason supported by the record, even if not specifically considered by the trial court.  *KB Home*, 236 Ariz. at 329, ¶ 14, 340 P.3d at 408.

---

[1] JCL challenges the denial in its cross-appeal.

[2] We cite to the current version of the statute unless otherwise noted.

¶8          If the death of a person is caused by a wrongful act, the party responsible for the act remains liable to an action for damages. A.R.S. § 12-611; *Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, 196, ¶ 7, 273 P.3d 645, 648 (2012) (citation omitted). A wrongful-death action can be brought by the surviving child of the deceased person for, and on behalf of the surviving children. A.R.S. § 12-612(A). Damages for wrongful death can include the decedent's prospective earning capacity; the loss of companionship, comfort and guidance caused by the death; and the survivor's emotional suffering. *Walsh*, 229 Ariz. at 196, ¶ 8, 273 P.3d at 648.

¶9          A person can be liable for the wrongful act of battery "if the [person] intentionally engages in an act that results in harmful or offensive contact with the person of another." *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 309, ¶ 9, 70 P.3d 435, 438 (2003) (relying on Restatement (Second) of Torts §§ 13, 18 (1965) (hereafter "Restatement")). A health care provider can commit a battery on a patient if a procedure is performed on the patient without his or her consent. *Id.* The battery claim can be defeated, however, "when consent is given." *Id.*

## A. Misrepresentation

¶10          Brown argues that JCL called her and falsely represented that there was a medical emergency requiring her consent to the use of a feeding tube, which later perforated Barna's stomach, resulting in her death. As a result, and citing to *Duncan* and Restatement § 892(B), Brown contends JCL's misrepresentation of a medical emergency rendered her consent ineffective.

¶11          Although both *Duncan,* 205 Ariz. at 311, ¶ 20, 70 P.3d at 440 ("[I]f a patient's consent is obtained by a health care provider's fraud or misrepresentation, a cause of action for battery is appropriate"), and Restatement § 892(B)(2)[3] may support the proposition that consent that is obtained by fraud or misrepresentation is actionable, no evidence was

---

[3] Restatement § 892(B)(2) states:

> If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

presented to the superior court that JCL purposefully lied to, or misled, Brown that there was a medical emergency requiring the immediate insertion of a feeding tube. Moreover, there was no evidence presented to the court that JCL mistakenly determined there was a medical emergency warranting the procedure, JCL knew of the mistake, or JCL tried to induce Brown's consent based on a misrepresentation.

¶12　　　　Brown, however, attempted to argue that the medical records and the death certificate supported her argument. But, whether there was not a medical emergency in this case, as she argued, is not "something that persons unskilled [in medicine] are capable of understanding" without the opinion of an expert. *Rudolph v. Ariz. B.A.S.S. Fed'n*, 182 Ariz. 622, 626, 898 P.2d 1000, 1005 (App. 1995). Unlike common events that citizens would recognize as an emergency, such as a gunshot wound, compound fracture, or visible epileptic seizure, to refute the claim in this case that there was a medical emergency that required the procedure, Brown needed to overcome the evidence contained in her mother's hospital chart for April 15, 2007 that demonstrated this emergency: "[patient] went into acute respiratory failure and required intubation and was transferred to the intensive care unit (ICU) for further care. The patient requires PEG tube placement for sheeting due to her multiple episodes of aspiration pneumonia previously and her current episode." Brown needed, but did not produce an affidavit or testimony from a medical expert who would testify that the information in the medical records did not support the claim that there was a medical emergency or that there was an immediate need for the feeding tube. And in the absence of expert medical evidence that there was no medical emergency, there was no genuine issue of material fact to preclude the grant of summary judgment. *See Riedisser v. Nelson*, 111 Ariz. 542, 544, 534 P.2d 1052, 1054 (1975) (if the matter is not one "of common knowledge among laymen; expert testimony is required"); *see also Adams v. Amore*, 182 Ariz. 253, 255, 895 P.2d 1016, 1018 (App. 1994) ("The function of an expert witness is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror.") (internal quotation marks and citation omitted). Consequently, the superior court did not err in finding Brown's consent to the procedure had not been procured by fraud or misrepresentation.

**B. Duress**

¶13　　　　Brown also contends her consent was obtained under duress. She argues that because JCL called her at 8:56 a.m., advised her about the medical emergency, the need for the medical procedure, as well as the

consequences of withholding consent, her consent was secured under duress. We disagree.

**¶14** Consent given under duress cannot be effective. Restatement § 892(B)(3). The Restatement provision does not define duress, but describes it as the "constraint of another's will by which [s]he is compelled to give consent when [s]he is not in reality willing to do so." Restatement § 892(B) cmt. j. Moreover, although subsection (3) "does not attempt to define the type of duress to which it applies," comment j notes that to render consent ineffective, generally the duress must be "quite drastic . . . and that clearly and immediately amount[s] to an overpowering of the will," and could include "force or threats of force against the person consenting . . . as well as immediate threats of that force." Restatement § 892(B) cmt. j; *see also* Black's Law Dictionary (10th ed. 2014) (broadly defining duress as "a threat of harm made to compel a person to do something against his or her will or judgment; esp., a wrongful threat made by one person to compel a manifestation of seeming assent by another person to a transaction without real volition.").

**¶15** There is no evidence that JCL used duress to secure Brown's consent for the medical procedure. There is no evidence suggesting force or threats of force, whether against her or her mother. There is no evidence that she was precluded from talking to her mother's doctor, if she had wanted, before giving her consent. The only evidence for the superior court to consider was the call to Brown that there was a medical emergency warranting a medical procedure and of the consequences that might result from failing to undergo that procedure. The call, without more, cannot constitute duress. And because there was no evidence of wrongdoing by JCL, the court did not err by granting summary judgment to JCL.

**C. Motion for New Trial**

**¶16** Brown also argues the superior court erred by denying her motion for a new trial. She argues that her due-process rights were violated by "[r]equiring [her] to have an expert witness for the lack of consent component at this late stage of [the] litigation, without notice." We disagree.

**¶17** We review the denial of a motion for new trial for an abuse of discretion. *State v. Larin*, 233 Ariz. 202, 206, ¶ 6, 310 P.3d 990, 994 (App. 2013) (citation omitted); *McBride v. Kieckhefer Assocs., Inc.*, 228 Ariz. 262, 266, ¶ 16, 265 P.3d 1061, 1065 (App. 2011). A violation of due process is a

question of law that we review de novo. *In re MH 2006-002044*, 217 Ariz. 31, 33, ¶ 7, 170 P.3d 280, 282 (App. 2007).

¶18 In arguing the superior court abused its discretion by denying her motion for new trial, Brown challenged the grant of summary judgment, which we have affirmed. She then argued that the ruling requiring her to have an expert violated her due-process rights. Brown omitted, however, that it was her burden to demonstrate with some admissible evidence that there really was no medical emergency warranting the medical procedure to create a genuine issue of material fact that her consent was ineffective. *See Nat.'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 26, 180 P.3d 977, 984 (App. 2008) (citation omitted). She had to overcome the evidence JCL had submitted, but did not.

¶19 Moreover, even though Brown is representing herself, she had to comply with the procedural rules to present admissible evidence to challenge JCL's evidence. *See Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287, ¶ 16, 17 P.3d 790, 793 (App. 2000) (noting that it is well-established that a party who conducts a case without a lawyer is held to the standards expected of a lawyer). She needed to present more than her conclusory argument that the absence of the word "emergency" in the hospital report, combined with the death certificate, could be used to infer there was no medical emergency and, as a result, her consent to the procedure was falsely procured. She needed an expert to explain that, despite the language of the report, there was no medical emergency warranting the procedure. *See Riedisser,* 111 Ariz. at 544, 534 P.2d at 1054. And it is only with a medical expert that the superior court, or other fact finder, could determine under the circumstances there was no medical emergency and Brown had been misled to consent to the medical procedure.

¶20 Because the law was well established that Brown had to counter JCL's motion with admissible evidence in order to demonstrate the existence of a genuine issue of material fact, there was no due process violation. Consequently, the court did not abuse its discretion by denying her motion for new trial.[4]

---

[4] Because we are affirming the grant of summary judgment, JCL's cross-appeal is moot. *See Portley v. Portley*, 134 Ariz. 492, 492, 657 P.2d 905, 905 (App. 1982).

**CONCLUSION**

¶21    Based on the foregoing, we affirm the judgment.



Ruth A. Willingham · Clerk of the Court
FILED: ama