NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CLINT SCHULER, et al., *Plaintiffs/Appellants*,

*v.*

ABHISHIEK SHARMA, M.D., et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0042
FILED 9-28-2021

Appeal from the Superior Court in Maricopa County
No. CV2018-098193
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Plezana Schuler, Clint Schuler, and Randi Schuler-Senseman, Mesa
*Plaintiffs/Appellants*

Broening Oberg Woods & Wilson, PC, Phoenix
By James R. Broening, Kelley M. Jancaitis
*Counsel for Defendants/Appellees Mohamed Abdulhamid, M.D., and Yossra M. Kambal Abdulhamid*

Quintairos, Prieto, Wood & Boyer, P.A., Scottsdale
By Rita J. Bustos, Andrew E. Rosenzweig, Samantha L. Butler
*Counsel for Defendants/Appellees Abhishiek Sharma, M.D., Glory Sharma, and Arizona Brain and Spine Center, P.L.L.C.*

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

**C R U Z**, Judge:

¶1        In this medical battery action, Plezana Shlee Schuler ("Mrs. Schuler"), Clint Schuler ("Mr. Schuler"), and their daughter, Randi Schuler-Senseman, (collectively, "Plaintiffs") appeal superior court rulings denying their motion for summary judgment, precluding Mr. Schuler from representing Mrs. Schuler in court, and denying their motion for leave to amend the complaint.  They also appeal the grant of summary judgment for Abhishiek Sharma, M.D.; Mohamed Abdulhamid, M.D.; their wives; and Arizona Brain and Spine Center, P.L.L.C (collectively, "Defendants").  For the reasons stated below, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Mrs. Schuler was hospitalized after an accident that caused a burst fracture of her T12 vertebrae.  Dr. Sharma, a neurosurgeon, assessed her injuries and recommended a five-level fixation fusion procedure from the T10 to L2 vertebrae and T12 laminectomy.  Dr. Sharma and Mrs. Schuler discussed the procedure, and Mrs. Schuler signed a consent form authorizing Dr. Sharma to perform a "T10-L2 fixation fusion, possible additional levels and T12 laminectomy."   The consent form stated, in relevant part:

> 4. I consent to the performance of operations and/or procedures in addition to or different from those now contemplated, but are necessary or advisable in the course of the operation due to unforeseen conditions.

> 5. I understand the practitioner performing the procedure may be assisted as necessary for the procedure by . . . [p]ractitioners including but not limited to resident/fellows, who will be performing important tasks related to the surgery, in accordance with the hospital's policies.

> All practitioners will be performing only tasks that are within their scope of practice, as determined under State law and

regulation, and for which they have been granted privileges by the hospital.

¶3        Dr. Sharma spent over an hour with Mrs. Schuler the day before her surgery discussing the injury, the risks and benefits of the proposed treatment, the goal of decompressing the spinal cord and stabilizing the fracture, which could involve vertebrae above or below the T10 to L2 vertebrae. Mrs. Schuler testified that Dr. Sharma said he would do a fusion on the T10 to L2 vertebrae and that it could involve more levels, but he would not know until the surgery was underway. Dr. Sharma confirmed that they could not know the exact nature of Mrs. Schuler's injuries or appropriate treatment until surgery.

¶4        According to Defendants, Dr. Sharma explained to Mrs. Schuler that because she needed a "non-traditional newer cortical screw technique," he needed an "assistant or co-surgeon" to help perform this part of the procedure to avoid having to transfer Mrs. Schuler to another facility. Dr. Sharma did not specifically name Dr. Abdulhamid but referred to him as his "partner." Doctors Sharma and Abdulhamid testified, and the contemporaneous medical records show, that they both saw and examined Mrs. Schuler the morning of her surgery while she was awake and alert. Mrs. Schuler does not recall meeting Dr. Abdulhamid the morning of her surgery or the specifics of her conversation with Dr. Sharma.

¶5        During the surgery, Doctors Sharma and Abdulhamid were "pleasantly surprised" to find that Mrs. Schuler's condition was such that they could perform a three-level fixation fusion procedure from T11 to L1 levels rather than the five-level fixation fusion from T10 to L2. That is, the surgery involved two fewer vertebrae than originally planned. Mrs. Schuler later developed complications that required another surgery with a different physician.

¶6        Plaintiffs sued Defendants, alleging a medical battery because Dr. Abdulhamid, not Dr. Sharma, performed a different procedure than the T10 to L2 fixation fusion stated in the consent form. Plaintiffs' complaint asserted several other claims that were later dismissed and are not relevant to this appeal.

¶7        Early in the litigation, Plaintiffs moved for summary judgment on the medical battery claim, arguing that Mrs. Schuler did not consent to the T11 to L1 fixation fusion procedure and that her consent did not include Dr. Abdulhamid. Defendants, on the other hand, argued that Mrs. Schuler orally consented to the procedure and to Dr. Abdulhamid's

participation. The superior court found genuine issues of material fact existed and denied the motion.

¶8 After further discovery, Defendants moved for summary judgment on the remaining medical battery claim. Plaintiffs argued that factual disputes precluded summary judgment. Specifically, they disputed that Mrs. Schuler orally consented to any procedure other than the T10 to L2 fixation fusion or to Dr. Abdulhamid's participation. Although Defendants again argued that Mrs. Schuler gave oral consent, they also argued, alternatively, that the written consent covered the procedure and both physicians. The superior court agreed and granted summary judgment for Defendants.

¶9 The superior court also held that Mr. Schuler, a non-attorney, could not represent Mrs. Schuler, and denied Plaintiffs' request to file a second amended complaint. Mrs. Schuler timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

I.      The Superior Court Properly Granted Summary Judgment For Defendants on the Medical Battery Claim.

¶10 A court shall enter summary judgment for the moving party if the record "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). We view the evidence in the light most favorable to the parties against whom judgment was entered and review de novo whether genuine issues of material fact exist and whether the superior court properly applied the law. *Awsienko v. Cohen*, 227 Ariz. 256, 258, ¶ 7 (App. 2011).

¶11 "A medical battery occurs when a physician performs a medical procedure without the patient's consent." *Carter v. Pain Ctr. of Ariz., P.C.*, 239 Ariz. 164, 166, ¶ 7 (App. 2016); *see also Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 309, ¶ 9 (2003). A patient's consent defeats a battery claim. *Duncan*, 205 Ariz. at 309, ¶ 9. Generally, "[t]he 'scope' of consent is an issue for the trier of fact." *Id.* at 311, ¶ 16 (quoting Restatement (Second) of Torts § 892A(2)(b) (1965) ("Restatement")); *see also Cathemer v.*

4

*Hunter*, 27 Ariz. App. 780, 785 (1976). However, based on this record, we cannot say that a reasonable juror could find that the written consent did not cover the T11 to L1 procedure or Dr. Abdulhamid's participation.

**¶12** To be effective, a patient must consent "to the particular conduct, or substantially the same conduct." *Duncan*, 205 Ariz. at 311, ¶ 16 (quoting Restatement § 892A(2)(b)). "The terms and reasonable implications of the consent given determine the scope of the particular conduct covered." *Duncan*, 205 Ariz. at 311, ¶ 16 (citing Restatement § 892A, cmt. d.).

A.    The Consent Covered the T11 to L1 Procedure.

**¶13** Mrs. Schuler gave consent to a fixation fusion procedure encompassing the T10 to L2 vertebrae and additional vertebrae if necessary. Both physicians expected to operate on the T10 to L2 vertebrae but were "pleasantly surprised" during the surgery to discover that Mrs. Schuler's bone was healthier than anticipated. As a result, they performed the same fixation fusion procedure on three vertebrae instead of five. The Schulers did not refute this. In fact, Plaintiffs contend they are entitled to summary judgment precisely because Defendants performed a "different" procedure than the T10 to L2 fixation fusion procedure stated in the consent form. The fact that the procedure was "different" does not mean it was outside the scope of consent. The test is whether the procedure performed was substantially similar in nature to the procedure Mrs. Schuler consented to. *Cathemer*, 27 Ariz. App. at 785.

**¶14** The undisputed evidence showed that the physicians discovered during the surgery that they could stabilize Mrs. Schuler's spine by performing the same procedure on fewer vertebrae. The physicians made this decision during surgery based on their medical judgment. The consent form anticipated that such decisions may be required. Plaintiffs presented no evidence showing that the T11 to L1 procedure was not substantially similar in nature to a T10 to L2 procedure or that it was not advisable based on the healthy condition of Mrs. Schuler's bone. To find a medical battery in these circumstances would discourage physicians from exercising their medical judgment. *See Conte v. Girard Orthopaedic Surgeons Med. Grp., Inc.*, 132 Cal. Rptr. 2d 855, 860-61 (Cal. Ct. App. 2003) (holding that a patient's consent to any procedure the surgeon found advisable included performing no surgical repair where the surgeon found that was the appropriate treatment).

¶15 Plaintiffs argue that the scope of the consent can only be decided by the fact finder, citing *Cathemer*, 27 Ariz. App. at 784. *Cathemer* is distinguishable. In *Cathemer*, 27 Ariz. App. at 782, the patient consented to a right hip prosthesis. He did not understand the meaning of that phrase and believed he was getting a total hip replacement. *Id.* A total hip replacement is a more extensive surgery that replaces the entire hip socket, whereas a hip prosthesis procedure consists of inserting a pin and ball into the femur, leaving the hip socket intact. *Id.* The court held that whether a total hip replacement and a right hip prosthesis were substantially similar procedures could not be decided as a matter of law, especially given the surgeon's own testimony detailing the differences. *Id.* at 785.

¶16 Here the physicians performed the *same* fixation fusion procedure on three of the five vertebrae covered by the consent form. As the Restatement § 892A, comment d, makes clear, whether "the person consenting knows that the surgeon may encounter unexpected conditions calling for a change in plan is to be considered in interpreting the extent of the consent. *Unless the understanding is made clear by express language*, these questions of interpretation are normally for the trier of fact to determine." (Emphasis added.) Here, the consent expressly covered the possibility of an additional or different procedure. Moreover, the Schulers did not refute Defendants' evidence that the T11 to L1 fixation fusion procedure was substantially similar in nature to the T10 to L2 fixation fusion procedure to which Mrs. Schuler consented. Thus, there was no dispute for a jury to decide.

¶17 Contrary to Plaintiffs' contention, the physicians' deposition testimony did not create a factual dispute precluding summary judgment. Their testimony was not inconsistent with their prior admissions and affidavits and did not preclude summary judgment. In discovery responses, both physicians admitted that there were no "complications or extenuating circumstances recorded in [their] operative reports for the surgery[.]" And Dr. Abdulhamid's affidavit stated that there were no unforeseen circumstances requiring that the procedure involve additional levels. Their deposition testimony, however, explained that the unforeseen condition or circumstance during surgery was the need to involve fewer vertebrae because Mrs. Schuler's bone was healthier than expected. Dr. Abdulhamid's testimony was not inconsistent with his affidavit, which was limited to unforeseen circumstances warranting *additional* levels. The deposition testimony responded to slightly different questions than those posed in the request for admission. Thus, the superior court properly considered the deposition testimony.

B.     The Consent Covered Dr. Abdulhamid's Participation.

¶18        The consent form stated Mrs. Schuler's understanding that Dr. Sharma "may be assisted as necessary" by other "[p]ractitioners including but not limited to residents/fellows, who will be performing important tasks related to the surgery, in accordance with the hospital's policies" and within their scope of practice.  Plaintiffs do not dispute that Dr. Abdulhamid's assistance was necessary, that he is a practitioner, or that he performed the surgery in accordance with hospital policies.

¶19        Plaintiffs contend that Dr. Abdulhamid was not Dr. Sharma's "assistant," instead he was a substitute or "ghost" surgeon not included on the consent form.   According to Plaintiffs, the term "assist" implies a subordinate.  This contradicts the plain language in the consent form.  It states that "the *practitioner* performing the procedure" may be assisted by another "*practitioner* [who] will be performing only tasks within their scope of practice[.]"   (Emphasis added.)   The language, therefore, covers a situation as here, where one physician assists another by performing one portion of a complex procedure within their scope of practice.  Because there was no evidence that Dr. Abdulhamid was not a practitioner performing within the scope of his practice and in accordance with hospital policy, the superior court properly granted summary judgment for Dr. Abdulhamid.  *See Orme Sch.*, 166 Ariz. at 309-10 (holding that the record must contain "evidence on which the jury could reasonably find for plaintiff").

¶20        Plaintiffs also contend the superior court erred in granting summary judgment for Defendants because there is a factual dispute about whether Mrs. Schuler orally consented to the T11 to L1 procedure or Dr. Abdulhamid's participation.  Although Defendants claimed there was a factual dispute over Mrs. Schuler's oral consent when responding to the Schulers' summary judgment motion, they later moved for summary judgment arguing, alternatively, that the written consent covered the procedure and Dr. Abdulhamid's participation.  As discussed above, the written consent was sufficient.  Thus, any dispute over Mrs. Schuler's oral consent was not material because the court properly granted summary judgment for Defendants based on the language in the written consent

form.[1] For the same reasons, we need not address Plaintiffs' claim that the court erred in considering parol evidence to show oral consent.

¶21 We affirm the grant of summary judgment for Defendants on the medical battery claim.

II. Mr. Schuler, a Non-Attorney, Could Not Represent Mrs. Schuler.

¶22 The superior court ruled that Mr. Schuler could not represent Mrs. Schuler in court proceedings or depositions. Contrary to Plaintiffs' assertion, the court did not deprive Mrs. Schuler of due process. A spouse who is not a member of the Arizona State Bar may not represent his or her spouse in court, regardless of the community nature of the claim. *See Haberkorn v. Sears, Roebuck & Co.*, 5 Ariz. App. 397, 399 (1967); *see also* Ariz. R. Sup. Ct. 31.1(a), 31.2 (only active members in good standing with the Arizona State Bar are authorized to practice law). Due process was satisfied here because the court provided Mrs. Schuler an opportunity to represent herself or hire counsel. *See Encinas v. Mangum*, 203 Ariz. 357, 359, ¶ 10 (App. 2002).

¶23 Plaintiffs also incorrectly characterize Mrs. Schuler's battery claim as community property. *See Jurek v. Jurek*, 124 Ariz. 596, 598 (1980) (holding that compensation for personal injuries to a spouse are separate property, but compensation for medical expenses and lost wages are community property). Regardless, the community nature of some damages does not authorize Mr. Schuler, a non-attorney, to represent his wife. *See Haberkorn*, 5 Ariz. App. at 399; Ariz. R. Sup. Ct. 31.1(a), 31.2. The superior court did not abuse its discretion when it denied Plaintiffs' motion for reconsideration on this issue without oral argument. *See* Ariz. R. Civ. P. 7.1(d) (allowing courts to decide motions without oral argument, even if it is requested).

III. The Superior Court Did Not Abuse Its Discretion by Denying Leave to Amend the Complaint.

¶24 Plaintiffs sought leave to file a second amended complaint. The superior court denied the request, finding that the proposed amendments were merely "extensive and unnecessary recitations of facts

---

[1] Plaintiffs also state that the superior court did not allow Mrs. Schuler to "testify" in opposition to Defendants' summary judgment motions. Plaintiffs do not contend that they had new or additional evidence to offer at the hearing. The court heard argument from Mrs. Schuler, which is all that is required based on this record.

. . . learned through the discovery process." We review the denial of a motion for leave to amend a complaint under an abuse of discretion standard. *Swenson v. County of Pinal*, 243 Ariz. 122, 128, ¶ 21 (App. 2017).

**¶25** Leave to amend shall "be freely given when justice requires." Ariz. R. Civ. P. 15(a)(2). Yet it is not an abuse of discretion to deny a motion for leave to amend if the amendment would be futile. *Swenson*, 243 Ariz. at 128, ¶ 21 (citing *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 292, ¶ 26 (App. 2010)). Plaintiffs argue that the amendment was necessary to update the facts and claims relating to Dr. Abdulhamid's role as a "ghost surgeon." However, the proposed amendments did not add any new parties or claims, only additional facts in support of their claim that Dr. Abdulhamid committed a battery because he was not listed on the consent form. As discussed above, the language in the written consent form covered Dr. Abdulhamid's participation. The proposed amended complaint did not assert additional facts that would change that conclusion. For example, the second amended complaint did not assert that Dr. Abdulhamid was not a "practitioner" or that he acted outside his scope of practice. Accordingly, the amendment would have been futile. We affirm the denial of the motion for leave to amend the complaint.

**CONCLUSION**

**¶26** We affirm the judgment for Defendants, the ruling that Mr. Schuler could not represent his wife, and the denial of the motion to amend the complaint. Defendants are entitled to costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342.



AMY M. WOOD • Clerk of the Court
FILED: AA

9