NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TONI BANNISTER, *Plaintiff/Appellant,*

*v.*

BRYAN GAWLEY, et al., *Defendants/Appellees.*

No. 1 CA-CV 22-0105
FILED 11-1-2022

Appeal from the Superior Court in Maricopa County
No. CV2019-054336
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

Toni Bannister, Glendale
*Plaintiff/Appellant*

Quintairos, Prieto, Wood & Boyer, P.A., Scottsdale
By Rita J. Bustos, Vincent J. Montell, Samantha L. Butler
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann joined.

---

**P A T O N**, Judge:

¶1        Toni Bannister appeals the superior court's order granting summary judgment in favor of Bryan Gawley, M.D., Heather St. Peter, M.D., and Gawley Plastic Surgery, Inc.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2015, Bannister underwent a prophylactic mastectomy on her right breast after genetic testing revealed she carried two mutated genes which predisposed her to breast cancer.  During that same surgery, and immediately after her mastectomy, Dr. Gawley reconstructed Bannister's right breast and inserted a breast implant.  Soon after, Bannister's incision opened, and she developed wound healing complications.  To treat these complications and prepare her breast tissue for a new implant, Dr. Gawley removed Bannister's right breast implant and replaced it with a tissue expander.

¶3        In 2017, Dr. Gawley removed Bannister's tissue expander and replaced it with a new right breast implant.  Bannister returned for three post-operative appointments with Dr. Gawley at which she said she was unhappy with the results of the surgery and was concerned about the asymmetry of her breasts.  At her final post-operative appointment, Dr. Gawley advised Bannister she would need additional surgeries and possibly another implant exchange to improve the symmetry and appearance of her breasts.  Bannister sought a second opinion from Dr. Matatov, a board-certified plastic surgeon who told Bannister that her 2017 reconstructive surgery was unsuccessful and that her inframammary fold was "obliterated" — a "common problem [seen in] revision surgeries."

¶4        In 2019, Bannister sued Dr. Gawley, Dr. St. Peter, and Gawley Plastic Surgery, Inc. for battery and medical negligence based on the failed 2017 reconstructive and implant replacement surgery.  Bannister alleged that Dr. Gawley intentionally removed the inframammary fold from her

right breast without her knowledge or informed consent. Bannister later amended her complaint and withdrew her medical negligence claim.

¶5 Defendants moved for summary judgment, arguing Bannister's consent to the 2017 surgery was a complete defense to her battery claim. The superior court granted summary judgment in favor of Defendants.

¶6 Bannister timely appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

¶7 On appeal from an order granting summary judgment, we review de novo whether the superior court "correctly applied the law and whether there are any genuine disputes . . . [of] material fact." *Rice v. Brakel*, 233 Ariz. 140, 142, ¶ 6 (App. 2013). The superior court will grant summary judgment when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

I. **Bannister's claim that Dr. Gawley did not obtain "informed consent" before surgery sounds in medical negligence, not battery.**

¶8 Bannister argues the superior court erred by granting summary judgment on her medical battery claim because there were "genuine issues of dispute in this case regarding informed consent."

¶9 Courts generally recognize two theories of liability for unauthorized medical treatment: medical battery and medical negligence. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 309, ¶ 11 (2003). Claims based on lack of informed consent sound in medical negligence and concern the "duty of the physician to inform his patient of risks inherent in [a] surgery or treatment to which [the patient] has consented." *Id.* at 310, ¶ 11 (citation omitted). When a patient consents to a certain procedure and the doctor performs that procedure but "an undisclosed inherent complication with a low probability occurs," the doctor, in obtaining consent, may have failed to meet his duty to disclose pertinent information. In these cases, the action should be pleaded in negligence. *Id.* (citation omitted).

¶10 Conversely, a healthcare provider commits a medical battery if he performs a medical procedure without the patient's consent. *Id.* at 309, ¶ 9. Consent is a complete defense to a battery claim. *Id.* (citing

Restatement (Second) of Torts §§ 13 cmt. d, 18 cmt. f, 892–892D). The central question in a medical battery case, therefore, is "whether the patient has effectively given his or her consent to the procedure." *Id.*

¶11 Before her 2017 right breast reconstruction and implant replacement surgery, Bannister reviewed and signed forms authorizing Dr. Gawley to proceed with the surgery and acknowledged that there were no guarantees or warranties as to the outcome of the procedure. Bannister signed additional consent forms acknowledging possible complications from the surgery including breast asymmetry, skin contour irregularities, unanticipated breast shape and size, and the need for additional corrective surgeries. Bannister later testified that Dr. Gawley reasonably concluded he had her consent to perform the surgery.

¶12 Although Bannister argues that Dr. Gawley did not have her *informed* consent to perform the reconstructive surgery because she did not know damage to her inframammary fold was a potential complication of the surgery, such informed consent claims sound in medical negligence, not battery. *See Rice*, 233 Ariz. at 20, ¶ 13 (2013) ("[O]ur supreme court has stated unequivocally" that informed consent allegations "must be pleaded under a negligence theory."). Because the record shows Bannister consented to the challenged procedure, she has failed to establish a prima facie case for medical battery.

II.     **There is no evidence that Dr. Gawley intentionally removed Bannister's inframammary fold.**

¶13 Bannister further argues that Dr. Gawley exceeded the scope of her consent by intentionally removing her inframammary fold. When a physician exceeds the scope of a patient's consent, a medical battery occurs. *See Duncan*, 205 Ariz. at 309, ¶ 9.

¶14 Bannister failed to produce any evidence that Dr. Gawley surgically removed her inframammary fold. The only evidence Bannister produced regarding the excision of her inframammary fold was Dr. Matatov's testimony that he did not believe Bannister's inframammary fold was surgically removed. Instead, Dr. Matatov testified that Bannister's previous mastectomies weakened and atrophied her inframammary fold, causing it to "self-obliterate." Dr. Matatov further testified that when he evaluated Bannister, he "did not see anything there that [stood] out [or] that [made him feel like an] … excision of the IMF [inframammary fold] was performed."

¶15        Although Bannister argues she "is confident that she, through her trial attorney, can prove" Dr. Gawley surgically removed her inframammary fold, she failed to produce any evidence of that through discovery. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 311 (1990) (a motion for summary judgment should not be denied "simply on the speculation that some slight doubt . . ., some scintilla of evidence, or some dispute over irrelevant or immaterial facts might blossom into a real controversy in the midst of trial."). Accordingly, the superior court did not err in granting the defendants' motion for summary judgment.

## CONCLUSION

¶16        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA