IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

SHUJA SAYED AHMAD and MARGARET S. AHMAD, surviving parents
of ALEXANDER SAYED AHMAD, deceased, *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, a body politic, *Defendant/Appellee*.

No. 1 CA-CV 14-0664
FILED 11-13-2018

Appeal from the Superior Court in Maricopa County
No. CV2008-030707
The Honorable David O. Cunanan, Judge

**REVERSED AND REMANDED**

COUNSEL

Treon & Aguirre, PLLC, Phoenix
By Richard T. Treon

Treon & Shook, PLLC, Phoenix
By Daniel B. Treon
*Co-Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Tucson
By Robert R. McCright
*Counsel for Defendant/Appellee*

---

**OPINION**

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge Lawrence F. Winthrop and Chief Judge Samuel A. Thumma joined.

---

**S W A N N**, Judge:

¶1        This is an appeal from an order of remittitur and conditional new trial on the jury's damages award in a wrongful death action.  We reversed and remanded in *Ahmad v. State* ("*Ahmad I*"), 240 Ariz. 380 (App. 2016).  The supreme court vacated our decision in *Ahmad I* and remanded the case to us for reconsideration in view of *Soto v. Sacco*, 242 Ariz. 474 (2017).  Applying the law of remittitur as articulated in *Soto*, we again reverse because the superior court failed to state with particularity the grounds for its order, and the record does not reveal substantial evidence to support the order.  We remand for entry of judgment on the jury's verdict.

**FACTS AND PROCEDURAL HISTORY**

¶2        During a pursuit by state and city law enforcement, a criminal suspect's vehicle struck and killed Shuja and Margaret Ahmad's son, Alex.  The Ahmads brought a wrongful death action against the state on the theory that the pursuit was unnecessary and dispatchers failed to communicate essential information.

¶3        The jury returned a verdict in favor of the Ahmads, awarding them $30 million in damages and finding the state 5% at fault for Alex's death.  The state moved for a remittitur or a new trial on damages.  The state argued that the jury's award included unavailable punitive and compensatory damages.  The superior court granted the state's motion, reducing the damages award to $10 million, thereby reducing the state's responsibility from $1.5 million to $500,000, and granted a conditional new trial on damages only.  The court held:

> While courts generally loathe to alter a jury award, Rule 59 of the Arizona Rules of Civil Procedure does permit a verdict, decision, or judgment to be vacated and a new trial granted if a damages award is excessive or insufficient.  Based upon the evidence presented at trial and the damages

recoverable in this action, the Court finds that the thirty million dollar award was excessive. Although the award by the jury was excessive, the Court acknowledges the findings of the jury. Based upon the evidence presented at trial, the Court finds that the reasonable value of damages is ten million dollars. Although this amount is on the high side of a reasonable and just damages amount, based upon the facts and law in this case and in deference to the jury's damages decision, the Court finds this amount appropriate.

¶4 The court denied the Ahmads' motion for a complete new trial on all issues and their motion for reconsideration, and, because the Ahmads declined to accept the reduced damages amount, ultimately ordered a new trial on damages. The Ahmads timely appealed, and we reversed and remanded in *Ahmad I*. We now reconsider that decision under *Soto*.

## DISCUSSION

¶5 Ariz. R. Civ. P. ("Rule") 59 authorizes the superior court, when it finds the jury's damages award excessive, to grant a new trial conditioned on the adversely affected party's rejection of a reduced damages award. Rule 59(f)(1)(A).[1] As *Soto* held, the court thereby "plays a role akin to a 'thirteenth juror' (a ninth juror in a civil case)"[2] and serves the "indispensable function" of acting as "the primary buffer against unjust verdicts." 242 Ariz. at 478, ¶ 8 (citation omitted); *see State v. Fischer*, 242 Ariz. 44 (2017) (discussing consideration of motions for new trial by the superior court and on appeal). But the court "should be circumspect in interfering with a jury verdict by carefully and sparingly exercising its discretion to reduce . . . a jury's damage award." *Soto*, 242 Ariz. at 477–78, ¶ 7. The court "may not simply substitute its judgment for the jury's." *Id.* at 477, ¶ 7. Remittitur is proper only when the court "is firmly convinced" that the verdict "reflects an exaggerated measurement of damages" and "is

---

[1] We cite the current version of the Rule because no changes material to this decision have been made since the 2014 trial. *Compare* Ariz. R. Civ. P. 59(f), (i) (2018) *with* Ariz. R. Civ. P. 59(i), (m) (2014).

[2] *Soto*'s analogy must not, of course, be read to suggest that the juror-unanimity requirement of criminal cases pertains to civil trials. *See* Ariz. Const. art. 2, § 23; A.R.S. § 21-102.

contrary to the weight of the evidence."[3]   *Id.* at 478, ¶¶ 8–9 (citation omitted).

**¶6**        *Soto* held that the jury has no more discretion in wrongful death than personal injury actions, and that the foregoing remittitur standard is identical in both categories of cases.  *Id.* at 481, ¶¶ 18–19.  *Soto* further held that the superior court must state with particularity the grounds for a remittitur order.  *Id.* at 479, ¶¶ 11–12 (construing materially similar provisions of 2016 version of Rule).  To satisfy the particularity requirement, the court must do more than merely quote or paraphrase the Rule—the court must "describe why the jury award is too high or low" in "sufficient detail to apprise the parties and appellate courts of the specific basis for the court's ruling so that they may avoid speculation."  *Id.* at 480, ¶¶ 13–14.  In the absence of such a description, an appellee bears the burden to show that the order "was supported by substantial evidence and did not constitute an abuse of discretion."  *Id.* at ¶ 15.

**¶7**        Here, the superior court recited the Rule and concluded, without elaboration, that the jury's award was excessive and should be reduced by two-thirds.  In doing so, the court failed to satisfy the particularity requirement as articulated in *Soto*.  Further, the state has not offered substantial evidence to support the reduced award, and we reject the state's arguments that we must nonetheless affirm.

**¶8**        The state first contends that the jury verdict was excessive because it was based on noneconomic damages alone.  But the law neither requires that damages in wrongful death actions include pecuniary harm, nor imposes constraints on awards that lack an economic component.  Wrongful death is a statutory cause of action, *Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, 196, ¶¶ 7–8 (2012), and the statutory scheme provides "a very broad base for the measure of damages," *City of Phoenix v. Whiting*, 10 Ariz. App. 189, 196 (App. 1969).  A.R.S. § 12-613 provides that

> [i]n an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating

---

[3]        When the court finds that "the damage award is tainted by 'passion or prejudice,' or is 'shocking[ly] or flagrantly outrageous,'" the court must order a new trial without a remittitur option.  *Soto*, 242 Ariz. at 478, ¶ 9.

> or aggravating circumstances attending the wrongful act, neglect or default.

A survivor's "injuries 'resulting from the death' . . . may include the decedent's prospective earning capacity; the loss of companionship, comfort, and guidance caused by the death; and the survivor's emotional suffering." *Walsh*, 229 Ariz. at 196, ¶ 8. The Ahmads presented considerable undisputed evidence that Alex's death caused them to suffer significant and profound emotional distress and a loss of companionship and comfort. Multiple witnesses testified that Alex shared a close, loving, and mutually supportive relationship with the Ahmads, and that his death caused them acute and continuing anguish. The "[t]ranslation into dollars of the loss of companionship, affection, and society, and the anguish the parents experienced as a result of their [child]'s death [wa]s peculiarly the jury's function." *Hernandez v. State*, 128 Ariz. 30, 32 (App. 1980). And nothing in the amount of the jury's award suggests that the jury exceeded its authority or acted out of passion or prejudice. Indeed, the $30 million sum for the two parents, combined with the attribution of 5% of the fault to the state, suggests that the verdict was the result of a temperate deliberative process.

¶9 The state nonetheless contends that a reduction was necessary because the Ahmads "requested only $10 million each." As an initial matter, the state's characterization of the Ahmads' position is factually incorrect—plaintiffs' counsel stated in closing argument that valuation of the Ahmads' damages was dependent on the jurors' "collective wisdom . . . in coming up with whatever you think is fair and just compensation," and he expressed that he did not "think a verdict *of anything less than* $10 million per parent is fair and just compensation." (Emphasis added.) Moreover, even if the Ahmads had requested a certain sum, the jury would not have been limited by that request. The jury's authority to award "such damages as it deems fair and just" is not dependent on parties' damages estimations. *See* A.R.S. § 12-613.

¶10 With respect to the state's contentions that the jury was necessarily influenced by references to unavailable categories of damages, we acknowledge that plaintiffs' counsel potentially implicated punitive damages by suggesting that the jury was tasked with preventing future deaths. *See* A.R.S. § 12-820.04 (punitive damages unavailable against public entities and public employees acting within scope of employment). But the court considered the state's objection to the remarks (which objection was raised both before and after the Ahmads' closing argument), and determined that the jury instructions adequately limited the jury to

compensatory damages.  In view of that ruling, we are unpersuaded by the state's supposition that the court concluded in the remittitur order, by its reference to "the damages recoverable in this action," that the jury awarded punitive damages.  Moreover, we hold that the jury was properly instructed that it could award damages for "[t]he loss of love, affection, companionship, care, protection, and guidance since the death and in the future," and "[t]he pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future."  *See supra* ¶ 8.  We presume that the jury followed the instructions, *Elliott v. Landon*, 89 Ariz. 355, 357 (1961), and the jury's conduct does not suggest otherwise.

**¶11**		Finally, we are unpersuaded by the state's contention that the damages were excessive in comparison to verdicts in other cases.  *Soto* held that comparative-verdicts analyses are "only marginally relevant and the trial court should not treat other damage awards as conclusive in assessing whether the jury made a just award," because "cases may be unique and turn on fact-intensive determinations, and juries may view similar cases differently."  242 Ariz. at 482, ¶ 22.  Even if we assume that the state's comparisons have some relevance, standing alone they are insufficient to establish justification for a remittitur.

**¶12**		We again conclude that the superior court's remittitur order constituted an abuse of discretion.

## CONCLUSION

**¶13**		We reverse the superior court's remittitur and remand for entry of judgment on the jury's verdict



AMY M. WOOD • Clerk of the Court
FILED:  AA