NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

F.S.T. FARMS INC., *Plaintiff/Appellee*,

*v.*

JOHN VANDERWEY, *Defendant/Appellant*.

No. 1 CA-CV 18-0594
FILED 12-26-2019

Appeal from the Superior Court in Maricopa County
No. CV2016-013758
The Honorable Roger E. Brodman, Judge

**VACATED AND REMANDED**

COUNSEL

Kercsmar & Feltus PLLC, Scottsdale
By Seth Goertz, Todd Feltus
*Counsel for Plaintiff/Appellee*

Gammage & Burnham PLC, Phoenix
By Gregory J. Gnepper, Cameron C. Artigue
*Counsel for Defendant/Appellant*

_____

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Randall M. Howe and Judge David D. Weinzweig joined.

_____

**S W A N N**, Chief Judge:

**¶1**        John Vanderwey and F.S.T. Farms, Inc., were parties to a written contract under which Vanderwey would lease farmland from Rexco, LLC; F.S.T. would farm the land; and Vanderwey and F.S.T. would split the crops produced, not as partners or joint venturers but simply as contracting parties.

**¶2**        Before the expiration of the contract term, the state condemned the land and reached a settlement with Rexco, causing Vanderwey to become unable to furnish the land to F.S.T. Neither Vanderwey nor F.S.T. was a party in the condemnation action, and neither received any part of the settlement proceeds.

**¶3**        F.S.T. thereafter sued Vanderwey for breach of contract and breach of the implied covenant of good faith and fair dealing, seeking damages measured by the amount that the state and Rexco had built into their settlement for crop loss. Vanderwey admitted liability but contended that F.S.T.'s damages were limited to the significantly more modest amount that F.S.T. acknowledged it would have realized in profit had the contract been fully performed. The superior court denied Vanderwey's requests for judgment as a matter of law and entered judgment on the jury's general verdict for a sum extrapolated from the condemnation settlement. We hold as a matter of law that F.S.T. was limited to damages compensating it for Vanderwey's inability to perform under the contract, without regard to third parties' settlement valuations. We therefore vacate the judgment. We remand for further proceedings to permit the factfinder to determine damages based on F.S.T.'s loss under the contract.

**FACTS AND PROCEDURAL HISTORY**

**¶4**        Vanderwey established the Vanderwey Children's Trust in 1976. The Trust purchased certain Phoenix farmland ("the Property") in 1980, and in 1996 transferred the Property to Rexco, Vanderwey's children's

limited liability company. Vanderwey leased the Property from Rexco starting in 1996, paying nominal annual rent.

¶5 Beginning in 1993, Vanderwey entered into a series of so-titled "Sharecrop Agreements" for the Property with brothers Thomas and Stephen Perez's farming business, eventually incorporated as F.S.T. Consistent with the previous agreements, the last contract in the series, effective until December 31, 2016, provided that Vanderwey would pay all rent for the Property, F.S.T. would farm it, the parties would evenly share certain crop-production expenses, and the parties would evenly share all crops produced or the income from the crops' sale. The contract expressly disclaimed creation of a partnership or joint venture.

¶6 In March 2016, the Arizona Department of Transportation ("ADOT") initiated a condemnation action against Rexco with respect to the Property. Though both Vanderwey and F.S.T. were aware of the action, neither intervened. ADOT and Rexco negotiated a settlement for $10,048,301, relying in part on an appraisal valuing the "Present Value of Future Crop Income" as $1,036,072 based on a remaining crop yield of 2.5 years. In July 2016, with six months remaining on the Sharecrop Agreement, the superior court entered judgment condemning the Property and awarding Rexco $10,048,301 as a lump sum. The state promptly satisfied the judgment via a single payment that Rexco did not share with Vanderwey or any other third party.

¶7 In October 2016, F.S.T. brought an action against Vanderwey for breach of contract and the covenant of good faith and fair dealing.[1] Vanderwey acknowledged liability under the contract but the parties disagreed about the amount of F.S.T.'s damages.

¶8 The litigation focused in large part on whether the Sharecrop Agreement was a lease giving F.S.T. a property interest or a cropper's contract creating an employment-like relationship. F.S.T. contended that because the Sharecrop Agreement was a lease, F.S.T. was entitled to one-half of the $1,036,072 (i.e., $518,036) that Rexco and ADOT had allocated to crop loss in settling the condemnation matter. Vanderwey, on the other hand, contended that because the Sharecrop Agreement was a cropper's contract, F.S.T.'s damages were limited to $10,000, the profit that F.S.T.

---

[1] F.S.T. also asserted claims for unjust enrichment against Rexco and for conversion against Vanderwey and Rexco, but the court ultimately entered judgment as a matter of law for the defendants on those claims, and F.S.T. voluntarily abandoned its appeal.

admitted it would have realized had the parties continued to perform through the contract term. Vanderwey alternatively argued that even if damages were measured based on the condemnation settlement, F.S.T.'s damages were limited to one-half of one-fifth of the allocation (i.e., $103,607) because the settlement allocation was based on thirty months' remaining crop yield, and only six months had remained on the Sharecrop Agreement.

¶9        The superior court denied the parties' competing motions for summary judgment on damages, and the matter proceeded to a jury trial. At trial, the court denied the parties' competing motions for judgment as a matter of law regarding whether the Sharecrop Agreement was a lease or a cropper's contract. The court instructed the jury that "[i]n the absence of an agreement to the contrary, a tenant [under a lease] farms the land and owns the crop he cultivates, while a sharecropper works the land of another for a share of the crop, without obtaining an interest in the property or ownership of the crop until it is divided."

¶10       The jury returned a special interrogatory identifying the agreement as a cropper's contract as opposed to a lease, and a general verdict awarding F.S.T. damages of $207,214.40 (equivalent to one-fifth of the $1,036,072 settlement-negotiation allocation). The court entered judgment on the general verdict and awarded attorney's fees to F.S.T.

¶11       Vanderwey filed several post-trial motions. He first moved for remittitur to $103,607, arguing that though the jury had adjusted the settlement allocation to reflect six months of lost crops, it had failed to adjust for the parties' shared interest in the lost crops. The court denied the motion. Vanderwey then filed a renewed motion for judgment as a matter of law, new trial, or amendment of the judgment, arguing that the jury's conclusion that the Sharecrop Agreement was a cropper's contract limited F.S.T.'s recovery to $10,000. The court denied that motion as well.

¶12       Vanderwey appeals.

## DISCUSSION

¶13       Under Ariz. R. Civ. P. ("Rule") 50, a party is entitled to judgment as a matter of law if the "party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." We

review de novo the denial of a motion for judgment as a matter of law.[2] *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 524, ¶ 14 (App. 2009).

**¶14** This appeal presents the narrow question of what F.S.T. could recover from Vanderwey *based on their contract.* The questions of whether F.S.T. held a property right making it eligible to recover in the condemnation action, or whether Rexco was unjustly enriched at F.S.T.'s expense, are not at issue.[3]

**¶15** The jury's identification of the contract as a "cropper's contract" was not, as Vanderwey contends, necessarily inconsistent with the general verdict. The nature of a contract must be determined by its express terms, not by its name. *Farmers Inv. Co. v. Pima Mining Co.*, 111 Ariz. 56, 58 (1974). Consistent with that principle, the jury was specifically instructed that the parties may by agreement modify the typical effect of a lease or cropper's contract. We therefore cannot presume that the jury's choice of nomenclature necessarily signaled a decision regarding the contract's effect.

**¶16** Through no fault of Vanderwey, a government taking for which he received no remuneration caused him to be unable to continue to furnish the Property under the Sharecrop Agreement. Under common law principles, Vanderwey could have argued that the condemnation excused his performance under the Sharecrop Agreement. *See, e.g.*, *Next Gen Capital, L.L.C. v. Consumer Lending Assocs., L.L.C.*, 234 Ariz. 9, 11, ¶¶ 7–8 (App. 2013); Restatement (Second) of Contracts §§ 261–65. But he chose not to pursue that affirmative defense and instead admitted contractual liability.

**¶17** Contract damages are intended to compensate for what the claimant lost because of the other party's non-performance. *E.g.*, *A.R.A. Mfg. Co. v. Pierce*, 86 Ariz. 136, 141 (1959); Restatement (Second) of Contracts § 347. "Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may

---

[2] F.S.T. suggests that Vanderwey did not properly preserve this issue for appeal. But though Vanderwey frames his argument on appeal primarily in terms of Rule 49(b)(3), he also specifically challenges the court's denial of relief under Rule 50.

[3] We note that nothing in the contract purports to grant F.S.T. any property right. Indeed, F.S.T. finally acknowledged at oral argument on appeal that the contract was not a lease.

reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract," *All Am. Sch. Supply Co. v. Slavens*, 125 Ariz. 231, 233 (1980), and the same is true for damages for breach of the implied duty of good faith and fair dealing, *see United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 137, ¶ 15 (App. 2006). Additional recovery is available only in exceptional circumstances, none of which are argued here. *See Burkons v. Tico Title Ins. Co. of Cal.*, 168 Ariz. 345, 355 (1991) (holding that tort damages are available for breach of the implied covenant of good faith and fair dealing only if the parties have a special relationship and restricting recovery to contract damages would promote breach); *Lerner v. Brettschneider*, 123 Ariz. 152, 156 (App. 1979) (holding that punitive damages are unavailable absent tortious conduct).

**¶18**         Here, the parties' contract did not address the effects of condemnation. The contract provided that the parties would share "all crops produced on the subject property" and "income received on account of growing and sale of crops from the subject property." Neither Vanderwey nor F.S.T. were parties to or received income from the condemnation settlement. What F.S.T. lost by virtue of Vanderwey's non-performance was not the opportunity to share in the settlement proceeds, but the opportunity to share in the income that would have been generated by continued crop production. F.S.T. did not argue that the amount assigned to crop loss by Rexco and the state in their settlement negotiations represented what a buyer would have paid. F.S.T. instead affirmatively stated that its lost profits were $10,000—far less than any amount extrapolated from the settlement negotiations. As a matter of contract law, F.S.T.'s recovery was limited to the $10,000 in lost profits plus any other actual losses it suffered as a result of the contract's premature end. The jury's award of $207,214.40 was an abuse of discretion. *Cf. Ahmad v. State*, 245 Ariz. 573, 576–78, ¶¶ 5–12 (App. 2018) (recognizing jury's latitude to measure tort damages). The superior court erred by denying Vanderwey's motion for judgment as a matter of law.

## CONCLUSION

¶**19** We vacate the judgment's awards to F.S.T. We remand with instructions for the superior court to conduct proceedings to determine the correct amount of damages on F.S.T.'s claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and to reevaluate the question of attorney's fees and costs. In exercise of our discretion, we deny both parties' requests for attorney's fees on appeal. As the successful party on appeal, Vanderwey is entitled to recover his costs on appeal under A.R.S. § 12-341, subject to compliance with ARCAP 21.

