NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JILL DILLON, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

DUANE D. PITT, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 22-0744
FILED 10-31-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2018-010042
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

---

COUNSEL

D.F. Rubin Law Firm PLC, Phoenix
By David F. Rubin
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Brown, Crowell & Friedman, PLLC, Tempe
By Paul D. Friedman, Ronda M. Kelso
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Law Office of A.J. Mitchell PLC, Scottsdale
By A.J. Mitchell
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Jones Skelton & Hochuli PLC, Phoenix
By Douglas R. Cullins, Eileen Dennis GilBride, Anne E. Holmgren
*Counsel for Defendants/Appellants/Cross-Appellees*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

---

**W I L L I A M S**, Judge:

**¶1**         Defendants Dr. Duane D. Pitt and Desert Institute for Spine Disorders, PC ("DISD") appeal the superior court's order denying their motion for remittitur following a jury verdict for Jill Dillon in this medical malpractice case. Dillon cross-appeals the court's grant of summary judgment for Pitt and DISD on her breach of fiduciary duty claim, as well as the court's ruling denying her requested punitive damages jury instruction. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Pitt performed surgery on Dillon at the Minimally Invasive Spine Surgery Center of Paradise Valley ("the Surgery Center") to fuse Dillon's C2-C3 vertebrae. During the surgery, Pitt observed significant scar tissue from previous surgeries and caused a tear in Dillon's esophagus. Pitt aborted the surgery, contacted an ear, nose, and throat surgeon for advice, and then repaired the esophageal tear after obtaining proper sutures. Dillon was transferred to Scottsdale Osborn Medical Center by ambulance and admitted to the Intensive Care Unit where she remained for ten days. After discharge, Dillon developed an infection and was readmitted to the hospital for an additional ten days.

**¶3**         Dillon sued Pitt and DISD (Pitt's corporation) for medical malpractice and breach of fiduciary duty. Dillon alleged that Pitt's conduct — proceeding with the operation despite "observing the condition of her neck" — fell below the applicable standard of care, that Pitt had a financial interest in the Surgery Center, and that he put his financial interests above Dillon's health and welfare by operating at the Surgery Center, which she claimed lacked adequate supplies, equipment, and personnel.

**¶4**         Before trial, the superior court granted Pitt and DISD's motion for partial summary judgment on Dillon's breach of fiduciary duty claim. With respect to DISD, the court noted Dillon had conceded that DISD owed

2

her no fiduciary duty.[1] Concerning Pitt, the court found that the factual basis for Dillon's fiduciary duty claim against him "ar[ose] out of [his] rendering medical or health-related services." The court concluded the claim was barred by the Medical Malpractice Act ("MMA"), A.R.S. §§ 12-561 through 12-573, and requiring Dillon to proceed under the MMA alone did not violate the anti-abrogation provision of the Arizona Constitution.

¶5          During a seven-day trial, a jury heard evidence relevant to Dillon's medical malpractice claim. After the close of evidence, the superior court denied Dillon's request for a punitive damages jury instruction. The jury rendered a $2.8 million verdict for Dillon. Pitt then moved the court for either remittitur of the award or a conditional new trial, arguing the verdict was excessive and unsupported by the evidence. The court denied both requests.

¶6          We have jurisdiction over Pitt and DISD's appeal, as well as Dillon's cross-appeal, under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1) and (5)(a).

## DISCUSSION

### I.     Appeal

¶7          Pitt argues the superior court erred in denying his motion for remittitur. We review the court's remittitur ruling for an abuse of discretion. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 581, ¶ 37 (App. 2015).

#### A.     Standard for Denial of Motion for Remittitur

¶8          Pitt first argues the superior court applied an incorrect legal standard when it denied his motion for remittitur. "[R]emittitur is a device for reducing an excessive verdict to the realm of reason" that "should be ordered only for the most cogent reasons, such as a lack of evidence supporting the damages awarded." *Id.* at 581, ¶ 38 (internal quotation omitted). "[I]f a verdict is so unfair, unreasonable, and outrageous as to shock the conscience of the court, or is plainly the product of passion,

---

[1] *See Gonzales v. Palo Verde Mental Health Servs.*, 162 Ariz. 387, 389 (App. 1989) (concluding no recognized fiduciary relationship exists between a patient and a hospital).

prejudice, mistake, or disregard of the evidence, a court may grant a remittitur or a new trial." *Id.* at 581-82, ¶ 38 (citation omitted).

¶9 Here, Pitt moved for a remittitur or a conditional new trial. In its ruling, the superior court set forth both the remittitur and the new trial standards. After examining the record and recounting with detail the testimony supporting the damages award, the court found the evidence reasonably supported the $2.8 million verdict and concluded the verdict neither shocked the conscience nor was so unfair and outrageous that it required court intervention. These explicit findings demonstrate that the court both considered the appropriate standard for remittitur and addressed the new trial standard. *Id.* at 581-82, ¶ 38. Pitt has shown no error.

### B. Sufficiency of the Evidence Supporting the Verdict

¶10 Pitt next argues the record does not support the $2.8 million verdict. As noted *supra*, a superior court should order remittitur only when there is insufficient evidence to support the damages award or if there is a "clear indication that the jury misapplied the principles governing damages." *In re Estate of Hanscome*, 227 Ariz. 158, 162, ¶ 14 (App. 2011). Because the superior court, like the jury, has an opportunity to observe witnesses' demeanor, we extend great deference to its remittitur and new trial rulings. *Creamer v. Troiano*, 108 Ariz. 573, 575 (1972).

¶11 Although hotly disputed, the trial evidence permitted a reasonable jury to conclude that Pitt's conduct fell below the reasonable standard of care when he performed (an unnecessary) surgery on Dillon where pre-surgery CT scans showed that Dillon's C2-C3 vertebrae had already fused through a process called auto-fusion. The jury also heard evidence that Dillon suffered an esophageal tear and acute respiratory acidosis, was transferred from the Surgery Center to the hospital, and was admitted to the Intensive Care Unit. Dillon later suffered gastronomy tube dislodgement and underwent a corrective procedure, resulting in a scar from the placement of 31 abdominal staples. Then, after her initial hospital discharge, Dillon was readmitted for ten days due to infection and ultimately suffered pain, stress, depression, and suicidal ideations. The superior court properly instructed the jury it could award damages for the nature, extent, and duration of the injury, pain, discomfort, suffering, disability, and disfigurement and consider any resulting anxiety and loss of enjoyment of life. Nothing in the record suggests the jury did not follow the jury instructions. The trial record supports the jury's verdict, and Pitt has provided no basis to conclude the court erred in upholding it. *Hanscome*, 227 Ariz. at 162, ¶ 14.

¶12            During closing arguments, Dillon's attorney told the jury that it had to decide the value of damages and that "[w]hether it's one dollar or $10 million, you all decide. I will suggest to you that it's $1.5 million." Pitt asserts remittitur was required because the jury awarded more than Dillon's attorney suggested, but the jury's verdict is within the range of possible damages mentioned by Dillon's attorney. Even then, the jury was not limited by counsel's suggestion, particularly given the jury's consideration of damages for pain, discomfort, suffering, disability, and disfigurement. *Ahmad v. State*, 245 Ariz. 573, 577, ¶ 9 (App. 2018); *see also Meyer v. Ricklick*, 99 Ariz. 355, 357-58 (1965) (noting that the damage amount in personal injury action is particularly within the jury's province, and the "law does not fix precise rules for the measure of damages but leaves their assessment to a jury's good sense and unbiased judgment.").

¶13            Although Pitt cites other jury verdicts, suggesting the verdict here is excessive, comparable verdict information is "only marginally relevant and the trial court should not treat other damage awards as conclusive in assessing whether the jury made a just award." *Soto v. Sacco*, 242 Ariz. 474, 482, ¶ 22 (2017). That Dillon did not claim future expenses or other economic loss also does not alter the analysis. There is no requirement that a plaintiff suffer economic damages. *See Ahmad*, 245 Ariz. at 577, ¶¶ 8, 9 (reversing court's remittitur of jury verdict from $30 million to $10 million and remanding for entry of judgment on the jury's verdict even though no economic damages claimed in wrongful death action resulting from unnecessary police pursuit).

## II.      Cross-Appeal

### A.      Breach of Fiduciary Duty Claim

¶14            Dillon argues the superior court erred in granting summary judgment to Pitt on her claim for breach of fiduciary duty and seeks a new

trial on this claim.[2] Pitt contends the court correctly ruled the MMA preempts the breach of fiduciary duty claim against him.[3]

**¶15** We review de novo a grant of summary judgment to determine if the superior court properly applied the law and whether any genuine issues of material facts exist. Ariz. R. Civ. P. 56(a); *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373, ¶ 13 (2021). We view the record in the light most favorable to Dillon. *Dinsmoor*, 251 Ariz. at 373, ¶ 13.

**¶16** Under the MMA, a party shall not bring a medical malpractice action against a licensed healthcare provider except in cases of alleged negligence, misconduct, errors, omissions, or breach of contract "in the rendering of health care, medical services, nursing services or other health-related services." A.R.S. §§ 12-562(A), -561(2). Relying on *Duncan v. Scottsdale Medical Imaging, Ltd.*, 205 Ariz. 306 (2003), Dillon argues the superior court's ruling applying the MMA unconstitutionally abrogated her right under Article 18, Section 6, of the Arizona Constitution (the anti-abrogation clause)[4] to recover damages caused by Pitt's breach of his common-law fiduciary duty.

**¶17** In *Duncan*, the plaintiff brought a claim for common law battery after her healthcare providers gave her a particular painkiller against her express wishes. 205 Ariz. at 308, ¶ 1. The superior court reclassified the battery claim as one for medical malpractice under the MMA and required expert testimony. *Id.* at 309, ¶ 6. It then dismissed the battery claim when the plaintiff failed to disclose an expert. *Id.* at 309, ¶ 7. Focusing on the underlying theory of liability for battery and the nature of the harm alleged (infringing on the patient's right of self-determination, specifically, the right to determine which medications she would accept or

---

[2] In her opening brief, Dillon does not develop any argument that the superior court erred in granting partial summary judgment to DISD. Although Dillon argues in her cross-reply brief that DISD is vicariously liable for Pitt, arguments made for the first time in a reply brief are waived. *Anderson v. Country Life Ins. Co.*, 180 Ariz. 625, 636 (App. 1994).

[3] Pitt also argues his subsequent bankruptcy discharge bars the breach of fiduciary duty claim. Given our resolution of this issue, we need not address Pitt's bankruptcy discharge status.

[4] Article 18, Section 6, of the Arizona Constitution provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

reject), the supreme court reversed and held that A.R.S. § 12-562(B) —a provision of the MMA that prohibits a plaintiff from bringing a cause of action for battery against a licensed healthcare provider —unconstitutionally abrogated the common law claim of battery. *Id.* at 313-14, ¶¶ 32-34. In contrast to a battery claim, a medical negligence claim "recognizes a physician's obligation to provide reasonable disclosure of the available choices with respect to the proposed procedures and the dangers inherently and potentially involved in each." *Id.* at 313-14, ¶ 32 (quoting *Rubino v. De Fretias*, 638 F. Supp. 182, 185-86 (D. Ariz. 1986)). Because the battery theory addressed a different *harm* than a medical malpractice action—the "injury" of "a violation of [the] right of self-determination" —the supreme court permitted Duncan to proceed with her common-law battery action outside the MMA. *Id.* at 314, ¶ 34.

¶18        In this case, Dillon alleged a breach of fiduciary duty based on Pitt's financial interest in the Surgery Center. Arizona case law recognizes that a physician owes a fiduciary duty to a patient, based on trust and confidence, to act in the patient's best interests by exercising the utmost good faith in rendering healthcare services. *Hales v. Pittman*, 118 Ariz. 305, 308-09 (1978) (noting that when a patient has given informed consent, a physician is not liable to a patient for unfavorable results absent malpractice or breach of contract in cases of guarantee or warrantee); *see also Nuzzo v. Camarata*, 2018 WL 4148990, *5, ¶ 21 (Ariz. App. Apr. 17, 2008) (mem. decision) (noting that the "utmost good faith" requirement refers to a physician acting in the best interests of the patient regarding his medical care).

¶19        As reflected in the complaint, the operative facts underlying Dillon's medical malpractice and breach of fiduciary duty claims were identical. Specifically, for both claims, Dillon alleged that Pitt's conduct fell below the applicable standard of care, that Pitt had a financial interest in the Surgery Center, and that Pitt put his financial interests above her health and welfare by performing the surgery at the ill-equipped Surgery Center. Equally important, Dillon alleged essentially the same physical harm under both claims, including that Pitt's actions subjected her to additional medical care. Although Dillon argues for the first time on appeal that she could have recovered disgorgement damages had she been permitted to pursue the breach of fiduciary duty claim at trial, she never suggested that discrete damages were available under that theory of liability in the superior court, either in her complaint or in her response to Pitt's motion for summary judgment. Indeed, Dillon did not raise such a claim in a motion to reconsider the summary judgment ruling, and in her request for jury

instructions on breach of fiduciary duty, Dillon requested only standard *personal injury damages* instructions for the *measure of damages*.

**¶20**         While other operative facts may give rise to discrete damages under medical malpractice/breach of fiduciary duty theories of liability, in this action, under Dillon's framing, no such damages were contemplated, much less alleged. Absent such allegations, the damages available under the breach of fiduciary duty claim were effectively subsumed in the medical malpractice claim. In other words, on this record, Dillon's claims were alternative theories for recovering the same damages resulting from the same injuries. Because "[a] plaintiff may not receive a double recovery for the same injuries or losses arising from the same conduct or wrong," 22 Am. Jur. 2d Damages § 32; *see also Vairo v. Clayden*, 153 Ariz. 13, 19 (App. 1987) ("[A] person is not entitled to recover twice for the same elements of damage growing out of the same occurrence."), even if the superior court erred by entering summary judgment on the claim for breach of fiduciary duty, Dillon suffered no resulting prejudice, *see* Ariz. R. Civ. P. 61 (imposing a harmless error standard, such that "[u]nless justice requires otherwise, . . . the court must disregard all errors and defects that do not affect any party's substantial rights"). Dillon therefore has shown no reversible error.[5]

### B.         Denial of Request for Punitive Damages Jury Instruction

**¶21**         Dillon challenges the superior court's denial of her request for a punitive-damages jury instruction, arguing sufficient evidence supported the instruction. Pitt responds that the issue is waived because Dillon failed to move for a new trial as required by A.R.S. § 12-2102(C). Dillon counters that we may review the court's ruling under A.R.S. § 12-2102(A).

**¶22**         Although A.R.S. § 12-2102(A) permits an appellate court to review intermediate rulings affecting a final judgment despite the absence

---

[5] Given our resolution of this issue, we need not address Dillon's contention that the superior court's ruling requiring her to proceed under the MMA instead of a common-law theory of breach of fiduciary violated Article 18, Section 6, of the Arizona Constitution. Nor do we consider Dillon's claim, for the first time on appeal, that the MMA unconstitutionally violates the equal protection and privileges and immunities clauses. *See Cook v. Cook*, 209 Ariz. 487, 493 n.6 (App. 2005) (finding constitutional issues not raised in the superior court waived); *see also State v. Mills*, 196 Ariz. 269, 274, ¶ 22 (App. 1999) (finding waiver of equal protection argument initially raised on appeal).

of a motion for a new trial, subsection C of the statute provides an exception:

> On an appeal from a final judgment the supreme court **shall not** consider the sufficiency of the evidence to sustain the verdict or judgment in an action tried before a jury unless a motion for a new trial was made.

A.R.S. § 12-2102(C) (emphasis added); *see also Lewis v. S. Pac. Co.*, 105 Ariz. 582, 583 (1970) (noting that subsection C is an exception to subsection A).

**¶23**      As relevant here, a party must move for a new trial to challenge the sufficiency of the evidence supporting or failing to support a jury instruction. *See* A.R.S. § 12-2102(C); *Lewis*, 105 Ariz. at 583 (holding a party must move for a new trial when challenging jury instructions based on the sufficiency of the evidence); *see also* Ariz. R. Civ. P. 59(a)(1)(F) and (H) (providing a motion for new trial may challenge jury instructions and sufficiency of the evidence, respectively); *Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 184, ¶ 22 (App. 2011) (refusing to consider under A.R.S. § 12-2102(C) a challenge to a jury instruction based on the sufficiency of the evidence in the absence of a post-verdict motion).

**¶24**      Citing *Lewis*, 105 Ariz. at 583, Dillon argues that A.R.S. § 12-2102(C) does not apply here because the requested instruction applied to damages and case law interpreting the statute specifically refers only to instructions related to a "theory of the case." But the statute's plain language is not limited to challenges to theories of the case. A.R.S. § 12-2102(C). Further, the statute has been applied when a party sought a jury instruction related to damages. *See Life Invs. Ins. Co. of America v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 533 (App. 1995) (holding that a challenge to the failure to give a mitigation-of-damages jury instruction based on insufficiency of the evidence required moving for new trial).

**¶25**      Dillon also suggests she is not challenging the *verdict*, so A.R.S. § 12-2102(C) does not apply. While it is true that Dillon is not challenging the $2.8 million compensatory damages verdict, she is challenging the *judgment*, which, in her view, fails to include an award for punitive damages. Thus, the statute's plain language applies, and Dillon had to file a motion for a new trial to preserve the issue. A.R.S. § 12-2102(C) (applying to "verdict or judgment"). Accordingly, we do not review the superior court's ruling denying Dillon's requested jury instruction.

**CONCLUSION**

¶26　　　　For the foregoing reasons, we affirm the superior court's judgment. Because the parties have not been successful in their respective appeals, each side shall bear its own costs.



AMY M. WOOD • Clerk of the Court
FILED:　AA